Milton Albert, J.
On May 14, 1963, a building belonging to claimants William and John Hilscher, located in the Town of Taghkanic in Columbia County, was destroyed by fire. An investigation of the cause of the fire was made by the Sheriff of Columbia County, this being the last of a series of four fires in the area over a period of a few weeks.
In the course of his investigation, the Sheriff questioned a number of people, including some boys from the Wassaic State School who were working on a farm owned by a Mr. Muth. The Muth farm was adjacent to the Hilscher property. During the investigation one Robert Brown, a patient of the Wassaic State School and employed at the Muth farm, was among the *369 patients questioned by the Sheriff. The questioning produced oral statements by Brown in which he admitted setting the fires at the Hilscher property and the three previous fires. During the course of the investigation, Brown directed the Sheriff to the scenes of the fires, including the Hilscher fire, and even showed the Sheriff where some missing personalty (water hose sections) were hidden in the brush near the Hilscher fire scene. Also, during this investigation Brown gave the Sheriff some matches which he had in his pocket — although Mr. Muth had stated that Brown was not allowed to have matches. In his record at Wassaic, there is an entry four days before the Hilscher fire that Brown “ smokes.” Therefore, the court assumes he must have been lighting his cigarettes with matches and that the medical staff knew of his smoking.
After a later statement by Brown was recorded, transcribed and signed by him in the office of the District Attorney of Columbia County, the Sheriff called the Wassaic State School, advised them of his having Brown in his custody, that Brown was suspected of setting fires* and requested that the school send a representative to take Brown back to the school. This was done that same day. Brown was in custody but a few hours. No charges were subsequently pressed against Brown, he was not arraigned, no indictment was sought, and no trial was conducted.
The Sheriff did not tell the school of the statement which Brown had signed; he only explained in his telephone call that Brown was suspected of setting fires.
The school authorities questioned Brown from time to time thereafter and there was testimony at the trial that they received affirmative and negative stories from him concerning his setting of the fires. Then, there was testimony from which the court gathers that the staff determined that Brown’s affirmative statements should not be given credence — one reason being that if the Columbia County authorities had a case against him they would not have returned him to the school without taking some kind of criminal action against him. No further investigation was made by the school and no member of the school staff ever telephoned or wrote to the Sheriff to request further information concerning the matter.
On August 16, 1963, about three months after the Hilscher fire, a cottage owned by claimant Hubert C. Meyers, located on Oblong Mountain in the Town of Amenia in Dutchess County, *370 was destroyed by fire. Claimant Meyers is employed at the Wassaie State School and was employed there in August of 1963 in the capacity as chief of dental service.
When apprised of the fire, Dr. Meyers went directly to the scene — a drive of but 10 minutes. After watching the cottage burn down despite efforts of the firemen who responded, Dr. Meyers returned to the school, asked whether any of the patients had eloped, and learned that Robert Brown had eloped from a work gang that morning. Dr. Meyers testified that he went back to the scene of the fire and, when it cooled off, he walked into the ruins, found his metal can (in which he kept book matches at the cottage) open although it had been shut when he last left the cottage before the fire. He testified that in the can he had book matches from a 1 ‘ Philippine Restaurant ” in New York City where he had dined about two weeks before.
Another witness, John G. Bergfels, testified that he saw a patient that he identified in court as Robert Brown in the vicinity of the road going up to the Meyers’ cottage on the day of the fire but sometime before the fire broke out.
The Sheriff’s office of Dutchess County was advised of the Meyers’ fire and a deputy sheriff, Robert W. Coons, went to the scene about 1:00 p.m. and began an investigation. He testified that, finding nothing there, he returned to his home, that about 6:00 p.m. that evening the fire whistle blew again, that this was for a fire at the Yellow City area which was about two and one-half miles up the road from the Meyers ’ property, that at about 6:30 p.m., with the assistance of a volunteer fireman, he took Robert Brown into custody on the Springarms Estate in the Yellow City area, and that they then took from Brown several packs of book matches.
Charles A. Borchers, chief investigator of the Dutchess County Sheriff’s office, testified that he investigated the Meyers’ and other fires that occurred at that time, that he took Brown into custody, that Brown admitted setting the Meyers’ and other fires, that after warning him of his constitutional rights a written statement was taken from Brown which Brown signed, that he took from Brown a book of matches with two matches left and with a cover from the ‘ ‘ Philippine Garden Restaurant” in New York City (Claimant’s Exhibit No. 11 in evidence), that Brown directed him in an automobile drive to the scenes of the Meyers’ and other fires, and that Brown was arrested and later indicted by the Grand Jury for arson, third degree.
*371 William and John Hilscher brought a claim (No. 45232) against the State for their property damage incurred as the result of their fire loss on May 14, 1963. A notice of intention to file a claim was filed with the Clerk of the Court of Claims and with the Attorney-General on August 12, 1963. The claim was filed with both of these officials on May 14, 1965 and has not been assigned or submitted to any other court or tribunal for determination.
Dr. Hubert C. Meyers brought a claim (No. 45320) for damages he sustained as the result of the fire at his cottage on August 16, 1963. A notice of intention to file a claim was filed with the Clerk of the Court of Claims and with the Attorney-General on November 12, 1963. The claim was filed with both these officials on June 11, 1965 and has not been assigned or submitted to any other court or tribunal for determination.
Both claimants claimed negligence on behalf of the State in the latter’s failure to properly supervise the said Robert Brown.
Although there was no order for a consolidation or joint trial, because of the similarity of witnesses, facts and law, the two claims were tried together, but separate judgments are to be entered. Likewise, only the liability portions of the claims were tried, with the assessment of damages, if liability be found, to be tried at a later date.
The State owes third persons no greater duty than does a parent and in the absence of indicated necessity, need not keep a patient under guard (Excelsior Ins. Co. v. State of New York, 296 N. Y. 40). “ A balance must be struck between contending interests — (1) the State’s duty to treat and care for its mental defective wards, with an eye toward returning them to society more useful citizens, and (2) the State’s concern that the inmates of its institutions cause no injury or damage to the property of those in the vicinity. That balance may be hard to achieve. We keep within settled legal principles, however, if the State is held only to a duty of taking precautions against those risks ‘ reasonably to be perceived ’ (Palsgraf v. Long Island R. R. Co., supra, p. 344), and if the community assumes the risk of accidental loss or damage to property by an inmate of an open institution such as Wassaic.” (Excelsior Ins. Co. v. State of New York, supra, p. 46.)
Benson v. State of New York (52 N. Y. S. 2d 239) is also of pertinence here.
Upon the trial, two primary issues had to be resolved concerning the evidence proffered. One concerned itself with the competency of the patient Robert Brown to testify upon the trial; and the other, with the admissibility of the statements *372 made by Robert Brown to the respective investigating Sheriffs and other public officials.
With respect to the first issue, the court heard testimony from Dr. Zagaloff, a psychiatrist on the staff of the Wassaic State School who, among others, had examined Robert Brown from time to time and was familiar with his history and diagnosis. It was her testimony that Robert Brown’s diagnosis under modern terminology was “ moderate mental retardation ”, that he had an I. Q. of between 45 and 59, that he was below the old classification of moron, that he had the capacity to remember, that he endeavored to tell the truth, that she felt he told her the truth, but that he was suggestible and, therefore, might tell a questioner what he thought the questioner' would like to hear. The court, after questioning Brown concerning truth and falsity and other matters of common knowledge, determined that he was competent to testify at this trial and thus permitted him to do so. The court found his testimony to be forthright and responsive. He identified a photograph of the Meyers ’ cottage, described the area in which it was located, and testified that he went there one day. Based on the court’s advice to him that he did not have to answer questions as to wrongdoing, he informed the court that he did not desire to answer questions along those lines. The court now finds that it made the proper determination in permitting Brown to testify to the limited extent that he did.
With respect to admission of the statements, the court finds they were voluntarily given and are admissible upon a civil trial, being otherwise competent and relevant (Terpstra v. Niagara Fire Ins. Co., 26 N Y 2d 70, decided Jan., 1970). The court notes that they were made before the United States Supreme Court handed down its decisions in Escobedo v. Illinois (378 U. S. 478 [1964]) and Miranda v. Arizona (384 U. S. 436 [1966]). The court also finds that no confidential relationship or privilege is violated with the admission of the statements.
The court finds, with respect to the claim of William and John Hilscher, that although a serious loss has been sustained, no evidence was produced upon the trial which would show any previous knowledge on behalf of the State of proclivity of Robert Brown for the setting of fires. Having no previous knowledge or suspicion relative to any propensities for setting fires, the court finds that, under applicable law, the State cannot be held liable for the fire damages sustained by William and John Hilscher as claimed in Claim No. 45232. The arson incident was unrelated to any previous behavior pattern and *373 was unforeseeable (Seavy v. State of New York, 21 A D 2d 445). Accordingly, the Hilscher claim must be and hereby is dismissed.
The court here reiterates that, following the fire at the Hilscher property, the staff at the school was advised by Sheriff Lawrence of Columbia County of Brown’s being suspected of setting fires. (We know that this information reached the appropriate staff members because of an entry in the daily log book of the security section of Wassaic on the day of the Meyers’ fire and before Brown was apprehended that evening in the Yellow City area. This was from Dr. Zarin’s office, that Brown had been accused of setting fires in Columbia County.) The staff at the school did not pursue the matter any further with Sheriff Lawrence of Columbia County, nor did they make any investigation of their own, other than to question Brown about the matter a number of times. So far as any investigation was concerned, the staff closed its eyes and ears to the warning given by Sheriff Lawrence that Brown was suspected of setting fires and apparently chose to accept the negative statements which Brown gave to them from time to time and which were in addition to affirmative statements that he also grave to them.
In the court’s view, the school staff should not have construed the failure, or reluctance, of the District Attorney of Columbia County Ao indict Robert Brown, as sufficient evidence to indicate that Brown was innocent. Such disposition by the District Attorney should no: have been relied upon by the school authorities to justify a conclusion that Robert Brown did not set any fires; the District Attorney could have had a number of reasons for suck disposition of the matter. Having been advised by Sheriff Lawrence that he had apprehended Robert Brown and that Brown was suspected of setting fires, the court finds that the school authorities were thereby put on notice and that they could not then close their minds from learning from the Sheriff what had happended in Columbia County. He could have told them of the circumstantial evidence that he had in addition to the statements made to him by Brown (cf. Daley v. State of New York, 273 App. Div. 552, affd. 298 N. Y. 880, where an unclearly motivated prior jumping from a ship was held to be notice of suicidal tendencies).
Following his return to the school in May, Robert Brown was restricted to working inside the school by reason of his elopement. He pleaded to be released from inside work and to be permitted to work outside; and permission for this was given by the medical director on August 15. On August 16 he eloped and, *374 by his statement given to the chief investigator of the office of the Sheriff of Dutchess County when apprehended after the Meyers ’ fire, admitted he set that fire. His setting of the fire is confirmed by other evidence admitted on the trial. He was seen in the vicinity of Dr. Meyers’ cottage about an hour before the fire, heading up the road toward the cottage. When apprehended that evening in the Yellow City area, which is ■some distance above the area of the Meyers’ cottage, he had on his person a book of matches carrying an advertisement of a little known restaurant in New York City which book of matches was of the same restaurant as those which were in the can in which Dr. Meyers kept books of matches at his cottage — which can was found open after the fire. After his admission to the chief investigator of the Sheriff’s office, Brown directed such investigator in an automobile trip to the scene of the Meyers’ fire. On the trial, Robert Brown identified a photograph of the Meyers’ property as a place to which he had gone. The court finds, based on the above evidence, that Robert Brown set fire to Dr. Hubert C. Meyers’ cottage.
The court also finds that the claimant Meyers’ loss is attributable to the negligence of the State in its failure to keep a close w'atch on Robert Brown, having been previously warned of his fire-setting tendencies. In this respect, the court distinguishes the instant situation from those in Excelsior (supra) and Seavy (supra). In Excelsior the court, at page 45, of 296 N. Y., held that the school authorities could not reasonably have anticipated the patient’s conduct; And in Seavy, the court, at page 448 of 21 A D 2d, held the patient’s history was devoid of pyromaniacal tendencies. The :State being liable to Dr. Meyers for his loss, a rescheduling of the trial of Claim No. 45320 shall be made by the Clerk of the court for the assessment of damages.
At the end of claimant Meyers’ case, the State made several motions upon which decision was then reserved. These motions were renewed at the end of the trial and decision was again reserved. The court now denies such motions.

 The reporter’s transcript does not show the word “ setting ”; the court’s handwritten minutes do. In either event, the latter concept was conveyed to the school authorities (see p. 373 of this decision).