695 P.2d 255

**Theo DeMONTINEY, surviving parent of Bobby Alcaida, Plaintiff/Appellant,**

v.

**DESERT MANOR CONVALESCENT CENTER INC., an Arizona corporation; George M. O'Brien, M.D.; Yuma County, a political subdivision of the State of Arizona; and Health Systems Research Institute, a Utah corporation, Defendants/Appellees.**

**No. 17479–PR.**

Supreme Court of Arizona, In Banc.

Jan. 22, 1985.

Reconsideration Denied March 5, 1985.

Sorenson, Moore, Benham, Garrett & Julian by J. William Moore, Phoenix, for plaintiff/appellant.

Gallagher & Kennedy by Michael K. Kennedy, Phoenix, for Desert Manor.

Crampton, Woods, Broening & Oberg by Donald P. Crampton, Phoenix, for Yuma County.

Weyl, Guyer, MacBan & Olson by Thomas G. Bakker, Phoenix, for George M. O'Brien, and Health Systems.

GORDON, Vice Chief Justice:

This petition for review arises out of a wrongful death action. We accepted review to consider whether Yuma County effectively delegated the duty of care it owes "mental-hold" patients, and to consider whether the trial court erred in failing to instruct the jury on the special duty of care owed to patients known to have suicidal tendencies.

The relevant factual and procedural background of this case follow. On June 6, 1978, Bobby Alcaida was taken into custody by the Parker, Arizona, police after an unsuccessful attempt to commit suicide. The Parker Police transferred custody to Yuma County Deputy Sheriff, Buddy McCall. Deputy McCall transported Alcaida to Desert Manor Convalescent Center ("Desert Manor") in Yuma. Yuma County had contracted with Desert Manor to set aside three "security" rooms in its healthcare facility to house "mental-hold" patients. Alcaida was admitted by Dr. George M. O'Brien, Medical Director of the Yuma County Health Department pursuant to a contract between Yuma County and Dr. O'Brien's employer, Health Systems Research Institute ("HSRI"), and placed in one of the three security rooms.

On the morning of June 7, 1978, the Superior Court entered an order detaining Alcaida at Desert Manor pending evaluation of his mental condition. After speaking with C.H. Darling, a Yuma County medical assistant and administrator, Alcaida signed a voluntary admission to the Arizona State Hospital. The Superior Court dismissed the petition for a court ordered evaluation and ordered Alcaida's release from Desert Manor. Because Desert Manor had a written rule which provided that no one was to enter a security room without a deputy sheriff and no deputy sheriff was on the premises when the order was issued, Alcaida was not released.

At approximately 7:25 p.m. that evening, Nurse Bauguss of Desert Manor went to check on Alcaida. She could not see him through the portal in the door of the room he was in and he did not respond to her call. She thought she saw "something" in the bathroom and believed Alcaida might have committed suicide. As no deputy sheriff was on the premises, she could not enter the room. She returned to the nurse's station and telephoned the Yuma County Sheriff's Department. Deputy McCall arrived at approximately 7:30 p.m., entered the room, and found Alcaida hanging by a bedsheet from an overhead pipe in the bathroom. At 7:55 p.m., Dr. O'Brien announced that Alcaida was dead.

Plaintiff-appellant Theo DeMontiney, the decedent's mother, filed an action for wrongful death against Desert Manor, Dr. O'Brien, HSRI, and Yuma County. The malpractice claims were presented to a Medical Liability Review Panel pursuant to A.R.S. § 12–567. The panel found no malpractice.

During trial, at the close of evidence, the trial court directed a verdict for Yuma County on all theories of liability, and for

Desert Manor and Dr. O'Brien on the issue of punitive damages. The jury returned verdicts in favor of Desert Manor, Dr. O'Brien, and HSRI. Judgments were entered accordingly. Appellant's motion for a new trial was denied.

The Court of Appeals decided eight issues. *Theo DeMontiney v. Desert Manor Convalescent Center, Inc.*, et al., 144 Ariz. 21, 695 P.2d 270 (1984). Appellant asks this Court to consider:

I. Whether Yuma County's motion for a directed verdict should have been granted.

II. Whether the trial court erred in refusing to give appellant's requested instruction 7.

III. Whether the trial court erred in refusing to give appellant's requested instructions 21, 26, and 27, and in modifying instruction 24.

IV. Whether the trial court erred in admitting at trial the findings of the Medical Liability Review Panel's decision concerning Desert Manor.

V. Whether the trial court erred in excluding evidence that Desert Manor's security rooms were not properly licensed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App. P 23. We approve the Court of Appeals' opinion as to issues III, IV and V; with respect to issues I and II, the opinion is vacated.

## DIRECTED VERDICT FOR YUMA COUNTY

■ The Court of Appeals, with one member dissenting, upheld the directed verdict in favor of Yuma County on the ground that the County was authorized to, and did, delegate its duty of care to mental-hold patients. We agree with the dissent that it is only the duty to provide services that is delegable; the overriding duty to provide care and treatment to a mental-hold patient is not.

Chapter 5 of Title 36 of the Arizona Revised Statutes authorizes the State Department of Health Services to provide mental health evaluation and treatment in certain circumstances. Persons may seek treatment from the department on their own, A.R.S. § 36–518, or "[a]ny responsible individual may apply for a court-ordered evaluation of a person who is alleged to be, as a result of a mental disorder, a danger to self or to others or gravely disabled and who is unwilling to undergo a voluntary evaluation." A.R.S. § 36–520(A). Because the liberty of a person alleged by another to be dangerous is at stake, we believe the statutes setting forth the specific course of action to be followed before such a person can be lawfully detained against his or her will, *see* A.R.S. § 36–520 *et seq.*, must be strictly construed. A.R.S. § 36–530 provides that once a person is admitted to an evaluation agency, he or she:

"shall receive an evaluation as soon as possible after the court's order for evaluation and receive care and treatment as required by his condition for the full period that he is being evaluated." [1]

The parties agree that this section imposes a duty of care upon Yuma County. The question presented is whether that duty may be delegated by contract such that the county is thereby relieved of all liability to mental-hold patients.

In support of the argument that the duty of care is delegable, the majority of the Court of Appeals, and appellee-Yuma County, rely on A.R.S. §§ 36–545.06, –545.07 in effect at the time of Alcaida's detention and death. A.R.S. § 36–545.06(A) provided that:

"Each county, or any combination of counties, shall provide directly or by contract the services of a screening agency and an evaluation agency for the purposes of this chapter."

A.R.S. § 36–545.07(A) provided that:

"The department [of health services] may enter into contracts with screening

---

1. This provision, and many other provisions of chapter 5, have been amended since the incidents relevant here occurred. All references to provisions of that chapter refer to those in effect as of June 6–7, 1978.

agencies, evaluation agencies, and mental health treatment agencies to provide prepetition screenings, court-ordered evaluations, voluntary evaluation, treatment of voluntary patients and treatment of patients under the provisions of § 36–524 regardless of the ability of the patient or proposed patient to pay. A county may be a party to a contract as a provider of services or as a party making payments to an agency to provide services on the part of the county. The state hospital may be included in the contract as a provider of services and may receive consideration not inconsistent with law."

That the statutes permit a county to contract with public or private entities to provide services it is unable or unwilling to provide is perfectly clear. However, the statute does not authorize the county to delegate its duty to provide proper care and treatment under A.R.S. § 36–530. When a county contracts for services, the contractee assists the county in fulfilling that duty; it does not relieve the county of it. Were the statutes to provide otherwise, a mental-hold patient harmed by a contractee would have no recourse against the county even though it is the county that is expressly responsible for the person's care and treatment and it is the county that chose the contractee who provided the actual care. The legislature's concern for persons who, as a result of mental disorders, threaten their own safety and well-being is clear. It is in the public interest that the county remain ultimately liable for any breach of that very important duty. Absent clear indication by the legislature that it intended to permit the county to delegate the duty, we will not infer that it did.

In addition, we do not believe the Legislature intended a system in which a county's liability to mental-hold patients is based on the county's ability, or willingness, to provide services directly. We believe the statutes relied on were intended to alleviate difficulties in procuring medical

personnel [2] rather than to allow counties to avoid liability for a breach of the duty of care owed to mental-hold patients.

■ In directing a verdict for Yuma County, the trial court deprived appellant of the right to have a jury determine if the County was, in its own right or through the acts of its contractees, in breach of the duty of care owed to her son. We therefore remand to the trial court, for further proceedings consistent with our finding that appellant was deprived of the right to have the jury determine if Yuma County was negligent in its own right (i.e. negligent in contracting with an organization that appointed a surgeon as admitting officer in charge of persons with mental disorders; negligent in contracting with a health care facility that would not permit its employees to enter a security room unaccompanied by a county deputy without ensuring that a county deputy would be on the premises at all times; negligent in contracting for a security room with an exposed pipe). Furthermore, given our disposition of the remaining issue, we remand for a determination of whether the county was negligent through the acts of its contractees.

### APPELLANT'S REQUESTED INSTRUCTION 7

Appellant challenges the trial court's refusal to give her requested instruction 7. That instruction provided:

"You are instructed that if those charged with the care and treatment of a mentally-disturbed patient knew of facts from which they could reasonably conclude that the patient would be likely to harm himself in the absence of preclusive measures, then they must use reasonable care under the circumstances to prevent such harm."

The trial court found it to be an accurate statement of law but an inappropriate instruction. It found the substance of the instruction was covered more generally and

---

2. In its brief before the Court of Appeals, Yuma County explained that the County Board of Supervisors decided to enter contracts to provide medical care because it was having difficulty employing doctors directly.

more properly in other instructions that were given. We assume the trial court was referring to plaintiff's requested instructions 11 and 14. Instruction 11 provided:

"A physician who undertakes diagnosis or treatment in the field of medicine is required to use the care, diligence and skill ordinarily used by competent physicians within the state acting in the same or similar circumstances."

Instruction 14 provided:

"It is the duty of one who undertakes to perform the services of a registered nurse to exercise that degree of care, skill, and learning expected of a reasonable, prudent registered nurse within the state acting in the same or similar circumstances."

The majority of the Court of Appeals upheld the trial court's decision.

■ We believe, however, that the trial court erred in failing to give plaintiff's requested instruction 7. A trial court must give a requested instruction if: (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions. *Porterie v. Peters*, 111 Ariz. 452, 532 P.2d 514 (1975); *Casey v. Marshall*, 64 Ariz. 232, 168 P.2d 240 (1946); *Lang v. City of Des Moines*, 294 N.W.2d 557 (Iowa 1980); *Elkader Cooperative Co. v. Matt*, 204 N.W.2d 873 (Iowa 1973). All three requirements were met in the instant case.

■ First, the evidence supported the instruction. The evidence showed that pursuant to its contract with Yuma County, Desert Manor placed Bobby Alcaida in a mental hold security room after Alcaida had unsuccessfully attempted suicide. This security room contained bed linens and an exposed pipe. The evidence also showed Desert Manor was fully aware of Alcaida's suicide try. These facts alone support the requested instruction.

Second, the instruction was supported by the law. In *Maricopa County v. Cowart*, 106 Ariz. 69, 471 P.2d 265 (1970), this Court considered the following issue: " 'what is the liability for suicide occurring in a juvenile detention home?' " *Id.* at 71, 471 P.2d at 267. In resolving this issue, we noted that, under the general rule, "suicide by the injured party is a superseding cause which is neither foreseeable nor a normal incident of the risk created and therefore relieves the original actor from liability for the death resulting from the suicide." *Id.*

This Court, however, stated that a different rule applied to "institutional" suicide cases. We recognized that various kinds of mental institutions have a *specific* duty of care to avoid the suicide of certain patients. Applying that specific duty to the *Cowart* fact situation, which involved a juvenile detention center, we stated:

"A reading of many 'institutional' cases leads us to the conclusion that a juvenile detention home must, in the care of the juveniles placed in its custody, exercise such reasonable care and attention for their safety as their mental and physical condition, *if known*, may require."

106 Ariz. at 71, 471 P.2d at 267. (emphasis in the original) (citation omitted). *Cowart*, therefore, was not limited to juvenile detention homes. Rather, it found a specific duty of avoiding suicide for mental institutions, and it applied that duty to juvenile homes.

Several other jurisdictions have recognized that institutions charged with the care and custody of persons known to have suicidal tendencies have a duty to take reasonable steps to prevent such persons from taking their lives. *Meier v. Ross General Hospital*, 69 Cal.2d 420, 445 P.2d 519, 71 Cal.Rptr. 903 (1968); *Stallman v. Robinson*, 364 Mo. 275, 260 S.W.2d 743 (1953); *Daley v. State*, 273 A.D. 552, 78 N.Y.S.2d 584 (1948); *Kent v. Whitaker*, 58 Wash.2d 569, 364 P.2d 556 (1961), *see generally*, Comment, *Civil Liability for Suicide; An Analysis of the Causation Issue*, 1978 Ariz.St.L.J. 573.

All of the above-cited cases conform to the Restatement of Torts, Second §§ 314 and 314A (1965). According to § 314,

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action."

Section 314A, however, sets out situations in which a special relationship between the parties gives rise to a duty to aid or protect. According to § 314A, "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" is under a duty similar to the duty of a common carrier to its passengers. The duty of a common carrier to its passengers is as follows:

"(a) to protect them against unreasonable risk of physical harm, and

"(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others."

Restatement of Torts, Second, § 314(A)(1) (a) and (b) (1965). This duty to protect the other against unreasonable risk of harm extends to risks arising from the acts of the injured party himself. See Restatement of Torts, Second § 314A, comment (d).

Thus, it is the special relationship between two parties that can give rise to a duty to prevent suicide. When an institution, such as Desert Manor, is charged with the care and custody of persons who it knows will be likely to harm themselves, therefore, that special relationship exists. Consequently, the institution has the duty to take reasonable steps to prevent suicide.

Third the gist of instruction 7 pertains to an important issue, and it was not given in any other instruction. Instruction 7 would have alerted the jury to the special duty existing under the particular facts of this case. It would have correctly informed the jury that if those charged with the care of plaintiff's decedent knew of his suicidal tendencies, they had an obligation to use reasonable care to prevent such harm. In contrast, instructions 11 and 14 are general instructions explaining the standard of care ordinarily required of doctors and nurses. Desert Manor argues that instruction 7 is merely a refinement of instructions 11 and 14. We disagree.

Instruction 7 tells the jury that Desert Manor has a duty to take reasonable steps to prevent a self-abusive patient in forced custody from harming himself. Thus, pursuant to instruction 7, the jury would not have the option of finding that health care professionals would be acting reasonably under the circumstances by doing nothing to prevent a suicidal patient from killing himself. Instructions 11 and 14, however, could be construed by the jury to allow the conclusion that reasonable health care professionals are not obligated to prevent suicide. Because instructions 11 and 14 permit this conclusion, they do not contain the gist of instruction 7.

Desert Manor, however, argues that no error occurred because "plaintiff's counsel did in fact argue to the jury that defendants had the duty to use reasonable care to prevent Mr. Alcaida from harming himself." We disagree. Instructions have a different effect upon the jury than closing arguments:

"Having just been warned that they need not accept the parties' closing arguments as fact, the members of the jury would not be likely to embrace and apply [plaintiff's] * * * argument as fully as if it had come from 'on high,' as it would if the court had given [plaintiff's] instruction or one of its own."

*Grover v. Commonwealth Plaza*, 76 Ill. App.3d 500, 31 Ill.Dec. 896, 394 N.E.2d 1273, 1280 (1979).

As the trial court erred in refusing to give plaintiff's instruction 7, the trial court's judgments as to Desert Manor, Dr. O'Brien, and H.S.R.I. are reversed and remanded for further proceedings. With respect to Yuma County, the case is remanded to the trial court for further proceedings. Opinion of the Court of Appeals approved in part and vacated in part.

HOLOHAN, C.J., and HAYS and FELDMAN, JJ., concur.

NOTE: Justice JAMES DUKE CAMERON did not participate in the determination of this matter.