263 P.3d 61

Rochelle E. COHEN, individually, and as the natural surviving parent of Joseph Eichten, and as Personal Representative of the Estate of Joseph Eichten, Plaintiff/Appellant,

v.

MARICOPA COUNTY, a political Subdivision of the State of Arizona, Defendant/Appellee.

No. 1 CA–CV 10–0511.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 16, 2011.

Skousen, Gulbrandsen & Patience, P.C. by Steve H. Patience, Mesa, Jensen Law Firm, P.C. by Christopher Jensen, Sean Phelan, Prescott, and Law Office of David L. Abney, Esq. by David L. Abney, Phoenix, Attorneys for Plaintiff/Appellant.

Olson, Jantsch & Bakker, P.A. by Daniel P. Jantsch, Edward M. Ladley, Phoenix, Attorneys for Defendant/Appellee.

**OPINION**

WINTHROP, Judge.

¶ 1 Rochelle E. Cohen ("Appellant"), individually and in her capacity as the natural surviving parent of Joseph Eichten ("Eichten") and personal representative of his estate, challenges the court's grant of summary judgment in favor of Maricopa County ("the County"). Appellant argues that the court erred because the County owed a nondelegable duty of care to Eichten, and issues relating to the breach of that duty are a question of fact for a jury. We disagree and affirm the court's entry of judgment in favor of the County.

**FACTS AND PROCEDURAL BACKGROUND** [1]

¶ 2 From July through December, 2003, Eichten was brought to a hospital six times for treatment of an overdose of the drug Soma,[2] and occasionally, cocaine. During

---

1. Unless otherwise noted, we cite the current version of the applicable statutes when no revisions material to this decision have since occurred.

2. Soma, which contains Carisoprodol, is a muscle relaxant and qualifies as a schedule IV drug under Arizona Revised Statutes ("A.R.S.") section 36–2515(A)(5) (2009).

one of these admissions, the examining doctor reported that Eichten was suffering from "moderate depressive symptoms complicated by his polysubstance abuse" and also stated that he "believe[d] that [Eichten] is on a self-destructive course and requires treatment for his depression." On December 20, 2003, Appellant submitted an "Application for Involuntary Evaluation (Pursuant to A.R.S. § 36–520)" and an "Application for Emergency Admission for Evaluation (Pursuant to A.R.S. § 36–524)" so that Eichten could be evaluated for treatment of his depression and substance addictions. After an initial evaluation was completed, Eichten was determined to be at risk for suicide and in need of treatment; accordingly, he was involuntarily transferred to Desert Vista Hospital for further evaluation. On December 24, 2003, while Eichten was still at Desert Vista Hospital, a petition for involuntary, court-ordered treatment was filed.

¶ 3 On December 30, 2003, the court found that Eichten presented "a danger to self" and ordered Eichten to undergo court-ordered involuntary treatment. Based on expert opinion, the court found that combined inpatient/outpatient treatment was appropriate. Eichten was required to undergo treatment until he was deemed to no longer be a danger to himself or others. Inpatient treatment was not to exceed ninety days and was to be administered and supervised by a local health treatment agency and/or the State Hospital. The outpatient treatment component was to be administered and supervised by ValueOptions, Inc. ("ValueOptions"). At the time of these events, the Arizona Department of Health Services contracted with ValueOptions to provide such outpatient treatment. Inpatient treatment was completed by January 5, 2004, and Eichten was discharged from the hospital to begin his court-ordered outpatient treatment.

¶ 4 Doctors working with ValueOptions continued to treat and counsel Eichten. On February 7, 2004, however, Appellant called ValueOptions' crisis line when she found Eichten passed out with Soma in his pocket. Law enforcement officers were called and arrived at the scene, and Appellant was advised to fill out an application for emergency admission for evaluation. Although Eichten was medically cleared at the scene, he was taken by the police and Appellant to Meta Services' urgent care center, a facility licensed by the State to provide "crisis level of psychiatric care." Meta Services provided such acute psychiatric services pursuant to a subcontract with ValueOptions. An on-site physician employed by ValueOptions was available to evaluate petitions for detainer and screen candidates for court-ordered evaluation or treatment.

¶ 5 On arrival at the urgent care center, Appellant submitted a petition for a mental health detainer; however, the ValueOptions physician who considered the petition determined that such detention was not medically indicated, and Eichten returned home.

¶ 6 The next morning, February 8, 2004, Appellant found Eichten unconscious on the floor of her home. Eichten was taken to a hospital, where he was pronounced dead, apparently due to an overdose of the drug oxycodone. The medical examiner subsequently classified the manner of death as "[u]ndetermined."

¶ 7 Appellant filed a complaint against ValueOptions and Meta Services under a variety of theories, including medical negligence, wrongful death, and violation of the Adult Protective Services Act. Appellant later amended the complaint to add the County as a party defendant, alleging the County owed non-delegable duties to Eichten and asserting claims for medical negligence, failure to provide emergency psychiatric screening, and violation of the Adult Protective Services Act.

¶ 8 Eventually, both Appellant and the County filed motions for summary judgment. After oral argument, the court ruled that neither A.R.S. §§ 36–526 (2009) nor 36–545.06 (2009) imposed a duty of care on the County. The court also ordered the parties to file briefs as to whether the County had a non delegable duty of care towards Eichten.

¶ 9 After supplemental briefing and oral argument, the court granted in part the County's motion for summary judgment. The court found that once Eichten was released from inpatient care on January 5,

2004, the County owed no further duty, either "direct or non-delegable." The court also ordered Appellant to disclose anticipated expert opinions regarding the January 5 release of Eichten and whether such release violated an applicable standard of care.

¶ 10 Appellant did not make any further expert witness disclosures; accordingly, the court granted summary judgment on the remaining claim [3] and dismissed with prejudice the amended complaint against the County. Appellant timely appealed.[4]

¶ 11 We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

■ ¶ 12 We review a grant of summary judgment *de novo* to determine "whether any genuine issues of material fact exist and whether the trial court erred in applying the law." *Washburn v. Pima County*, 206 Ariz. 571, 574, ¶ 4, 81 P.3d 1030, 1033 (App.2003). We view the evidence in the light most favorable to the party opposing summary judgment, in this case Appellant, and construe reasonable inferences in Appellant's favor. *See Chalpin v. Snyder*, 220 Ariz. 413, 418, ¶ 17, 207 P.3d 666, 671 (App.2008).

■ ¶ 13 On appeal, Appellant argues that the County owed a continuing, non-delegable duty of care to Eichten and such duty arose out of A.R.S. §§ 36–526, 36–540.01 (2009), 36–545.06, and/or the court's December 30, 2003 order for treatment. Accordingly, Appellant contends that, although ValueOptions was in charge of administering Eichten's outpatient care, the County remained responsible for such care because its duty to Eichten was non-delegable. Generally, whether a duty exists is a question of law for the court to decide, whereas issues related to breach and causation are issues of fact. *See, e.g., Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11, 211 P.3d 1272, 1279 (App.2009); *Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, 437, ¶¶ 9–10, 153 P.3d 1064, 1066 (App.2007).

¶ 14 According to Appellant, the County and its agents had a statutory duty to: 1) perform an examination of a person who presents for emergency admission to a hospital, and if the person is found to present a danger to self or others, admit such person to a hospital; 2) develop an outpatient treatment plan; 3) require and review periodic reports on the condition of the patient and his or her outpatient treatment at least every thirty days; 4) rescind outpatient treatment and order a return to an inpatient mental health treatment agency if it finds the patient has failed to comply with the outpatient treatment plan or for any reason it deems appropriate; and, 5) provide directly or through contract, screening and evaluation services and coordinate the provision of such services.[5] *See* A.R.S. §§ 36–526(A); 36–540.01(B), (F), (G), and (I); 36–545.06.[6]

¶ 15 In this case, Appellant contends there was a failure to properly monitor Eichten's

---

3. Appellant concedes on appeal that the County's release of Eichten from inpatient care on January 5, 2011 did not constitute a breach of duty, nor was it a contributing factor in Eichten's subsequent death.

4. Neither ValueOptions nor Meta Services are parties to this appeal. The court granted summary judgment in favor of Meta Services, and Appellant has since reached a settlement with ValueOptions. The nature of that settlement, including terms of such agreement and any release provisions, is not part of the record in this appeal.

5. For the purposes of these statutes: "[e]valuation" is defined as "a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions carried out by a group of persons" consisting of either licensed physicians, psychologists, and/or social workers; "[e]xamination" is defined as "an exploration of the person's past psychiatric history and of the circumstances leading up to the person's presentation, a psychiatric exploration of the person's present mental condition and a complete physical examination;" and "[o]utpatient treatment plan" is defined as "a treatment plan that does not require continuous inpatient hospitalization." A.R.S. § 36–501(12), (14), and (30) (Supp.2010).

6. For a comprehensive discussion of the Mental Health Services Act and the duties imposed by the Act on the State, its counties, and independent contractors, see *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 598–600, 775 P.2d 521, 526–28 (1989) and *In re Pinal County Mental Health No. MH–201000029*, 225 Ariz. 500, 503–04, ¶¶ 12–14, 240 P.3d 1262, 1265–66 (App. 2010).

outpatient progress and a failure to timely rescind or amend the outpatient treatment plan and reinstate involuntary inpatient care. Further, Appellant seeks to hold the County liable for the alleged negligent decision by ValueOptions to not detain Eichten at the Meta Services facility on February 7, 2004.

¶ 16 While in the County's custody and pursuant to the court-ordered treatment plan, Eichten received an initial examination and admission into a health care facility and was provided evaluation and screening services while he underwent his inpatient treatment at Desert Vista, a county-run hospital. Upon Eichten's physician-ordered release from Desert Vista, the County prepared an outpatient treatment plan and transferred and/or coordinated Eichten's outpatient treatment with ValueOptions in accordance with his court-ordered and approved outpatient treatment plan. According to the court-ordered treatment plan, ValueOptions was wholly responsible for managing Eichten's outpatient treatment. Accordingly, any statutory duties not already fulfilled by the County that arose during Eichten's outpatient treatment would be obligations owed to Eichten by ValueOptions. In other words, ValueOptions was solely responsible for the care of Eichten once he was released from his inpatient treatment and was no longer under the County's direct control and supervision.[7]

¶ 17 Appellant contends, however, that under *DeMontiney v. Desert Manor Convales-*cent Ctr., Inc., 144 Ariz. 6, 695 P.2d 255 (1985), the County had a non-delegable duty to provide continuing care for Eichten even after he entered the outpatient phase of his court-ordered treatment. Appellant argues, therefore, that during outpatient treatment, the County owed the same duties to Eichten as its alleged agent, ValueOptions, and is both directly and vicariously liable for any breach of such duty.[8]

¶ 18 In *DeMontiney*, Yuma County had contracted with the Desert Manor Convalescent Center to provide "security rooms" to temporarily house involuntarily detained or "mental-hold" patients. 144 Ariz. at 7, 695 P.2d at 256. A patient held in one of these security rooms committed suicide before he could be transferred to the State Hospital. *Id.* The patient's mother filed a wrongful death suit against several entities and providers, including Yuma County. *Id.* Our supreme court overturned a directed verdict in favor of Yuma County. *Id.* at 8, 695 P.2d at 257. The court found that, pursuant to § 36-545.06(A), Yuma County had a duty to provide screening and evaluation services to involuntarily detained patients. *Id.* The court noted that while Yuma County was statutorily authorized to contract with other entities to provide such services, "the statute does not authorize the county to delegate its duty to provide proper care and treatment under A.R.S. § 36–530" and "[w]hen a county contracts for services ... it does not relieve the

---

7. Appellant contends that the trial court refused to accept her expert's affidavit, which generally opined that the County and its agents owed and breached a duty of care to prevent Eichten from committing suicide during his treatment and breached such duty. Nothing outside of Appellant's uncorroborated assertion exists to support her argument that the court refused to accept and appropriately consider the affidavit. Further, as discussed above, the determination of whether a duty exists is a matter of law for the trial court. Our review of the record shows that the expert's statements in this regard were not only impermissibly conclusory in nature, but also confused the role of the County with that of ValueOptions.

8. If, as part of her settlement agreement with ValueOptions, the alleged agent, Appellant has released ValueOptions from liability, such release may operate to also release the County, the al-leged principal, as a matter of law. *See Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 326, 529 P.2d 224, 225 (1974) (noting that "where the master's liability is based completely on the negligent acts of his servant, a judgment on the merits in favor of the servant relieves the master of liability" and also recognizing that a dismissal with prejudice operates as a dismissal on the merits); *but see* A.R.S. § 12–2504 (2003) (When a release is given to one of multiple parties that may be "liable in tort for the same injury or the same wrongful death," the release does not discharge the liability of the other parties "unless its terms so provide." The release may also serve to reduce the claim against the remaining parties.). This issue was not raised in the trial court, nor has it been briefed on appeal. Accordingly, we decline to speculate about the remaining viability of a vicarious liability claim against the County.

county of [its duty of care]." [9]  *Id.* at 9, 695 P.2d at 258. The court recognized that public policy in this setting of involuntary detainment or commitment mandated a county remain "ultimately liable" for any breach of duty of care, and that "[a]bsent clear indication by the legislature that it intended to permit the county to delegate the duty, we will not infer that it did." *Id.*

¶ 19 There are important distinctions between *DeMontiney* and the instant case. In *DeMontiney*, the subject patient had been involuntarily detained in the custody of Yuma County and the county was expressly responsible for the patient's care under § 36–530. If, in the case at bar, Eichten had committed suicide while in the involuntary custody of Maricopa County at the Desert Vista Hospital in early January 2004, *DeMontiney* would apply, and the County would have had a non-delegable duty concerning his care at that facility.

¶ 20 Further, in *DeMontiney*, Yuma County had contracted with Desert Manor to provide the complained-of services. Here, the treatment at issue was provided pursuant to contracts between the State of Arizona and ValueOptions, and between ValueOptions and Meta Services. The parties have not provided anything in this record to reflect that the County directly contracted for services with either provider.[10]

¶ 21 More importantly, we conclude that, of necessity, the holding of *DeMontiney* as to non-delegable duty is limited to its unique setting. Such duty clearly applies where the patient is being involuntarily held in the County's custody. *See DeMontiney*, 144 Ariz. at 9, 695 P.2d at 258. In that instance, the County has the ability to exclusively control the environment surrounding the patient and to control and reduce risk associated with such environment. In contrast, when the patient is out of such controlled environment, even though allegedly in compliance with a court-approved outpatient treatment plan, the County has little practical control over that patient, the patient's environment or the actions of others, and thus has little to no control over risk. If a county directly contracts with others to provide such care, it has the ability through contract to mandate how the care will be provided, and to control or manage through an indemnity provision or an additional insured clause the risk of harm that might be caused by the negligence of such contracting provider.

¶ 22 As noted, there is no evidence in this record of a contractual relationship between the County and ValueOptions. Even assuming there was, there is no evidence ValueOptions was negligently selected or retained as a provider. Adoption of Appellant's theory of liability would impose liability on the County for the judgment, actions, or inactions of a licensed professional who was neither an employee nor the appointed agent of the County. We decline to interpret *DeMontiney* as creating or approving of such extension of liability. Appellant has exercised her legal remedies against the providers directly involved in making professional judgments and providing her son's care on February 7, 2004, and we decline in this setting to extend or create another layer of potential recovery.

## CONCLUSION

¶ 23 The trial court's ruling granting summary judgment in favor of the County is affirmed.

---

9. The responsibilities of an evaluation agency once a court orders the involuntary evaluation, care, and treatment of a patient are set forth in A.R.S. § 36–530 (2009).

10. To the extent that the County possesses a duty to coordinate screening and evaluation services with ValueOptions pursuant to § 36–545.06, we do not believe that such duty extends to monitoring the daily decisions of, and actual treatment rendered by, a contractor. *See, e.g., Morohoshi v. Pacific Home,* 34 Cal.4th 482, 20 Cal.Rptr.3d 890, 100 P.3d 433, 437–38 (2004) (Finding that although regional centers possessed many statutory and non-delegable duties to coordinate, monitor, implement and secure (though not provide) treatment services for the developmentally disabled by contracting with care facilities, the regional center's "monitoring responsibilities" were limited and did not require "the hour-by-hour monitoring that would have been required to prevent [the decedent's] tragic death." The court noted that regional centers "could not possibly provide [such] continuous monitoring" and that the state legislature did not contemplate such a duty.).

CONCURRING: MAURICE PORTLEY, Presiding Judge and ROGER E. BRODMAN, Judge.

Pursuant to Article VI, Section 3 of the Arizona Constitution, the Arizona Supreme Court designated the Honorable ROGER E. BRODMAN, Judge of the Arizona Superior Court, to sit in this matter.