NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW KUNASEK, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

CHRISTOPHER E. JOHNSON, *et al.*, *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 20-0061
FILED 9-22-2022

Appeal from the Superior Court in Maricopa County
No. CV2013-001665, PB2013-050973
CONSOLIDATED
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Beus Gilbert McGroder, PLLC, Phoenix
By Timothy J. Casey
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Gordon Rees Schully Mansukhani, LLP, Phoenix
By Leon B. Silver, Andrew S. Jacob, Rachel L. Werner, Rebecca N. Cain
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Fredenberg Beams, LLC, Phoenix
By Daniel E. Fredenberg, Christian CM Beams, Fredric D. Bellamy
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Lewis Brisbois Bisgaard & Smith, LLP, Phoenix
By Sean P. Healy, Robert C. Ashley, Kathryn A. Honecker
*Counsel for Defendants/Appellants Jeff Schneidman and Jane Doe Schneidman*

Manning & Kass Ellrod Ramirez Trester, LLP, Phoenix
By Chrisanne M. Gultz
*Co-Counsel for Defendants/Appellants Jeff Schneidman and Jane Doe Schneidman*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

---

**C A T T A N I**, Chief Judge:

¶1        After the Roadrunner Trust (the "Trust") was stripped of its assets, Andrew Kunasek, a Trust beneficiary, sued the trustees for breach of fiduciary duty and sued the settlor and the Trust's attorneys for aiding and abetting that breach.  A jury returned a verdict in Kunasek's favor awarding $10,500,000 in compensatory damages and $10,500,000 in punitive damages.  The trustees, the settlor, and the Trust's attorneys appealed from the resulting judgment, and Kunasek cross-appealed.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        George Johnson is the founder and, through a personal trust, the owner of Johnson Utilities, LLC, a public utility company operating in south-central Arizona.  Johnson and Kunasek had a long-standing friendship.  In 2006, for minimal consideration, Johnson granted Kunasek

(through a wholly owned corporation) an option (the "Option") to purchase 5% of Johnson Utilities at a set price, valid through January 1, 2026. Attorney Jeff Schneidman, who had represented Kunasek and members of his family on other matters, prepared the Option, with both sides waiving any conflict of interest.

¶3            In 2007, Johnson created the Trust (expressly designated as irrevocable), naming his adult children, Christopher and Barbara,[1] as trustees. Schneidman drafted the Trust's governing document and acted as the Trust's attorney. Several members of Johnson's family (including the Trustees), a business associate's son, and Kunasek were the Trust's beneficiaries, with Kunasek receiving a 5% share.

¶4            Johnson placed into the Trust several assets that had preexisting business ties to Johnson Utilities. These assets included Shea Utility Services, Inc. ("Shea") as well as an engineering firm, a contractor, and a golf course. Shea had an existing agreement to provide day-to-day management services for Johnson Utilities, which was the primary income-generator for the Trust. That management agreement had a ten-year term (ending at the beginning of 2008) and could be terminated at will thereafter. Schneidman and attorney Gary Drummond (who was also Johnson's personal attorney) represented these Trust assets, as well as other Johnson-related entities.

¶5            In 2009, the State of Arizona investigated Johnson Utilities for environmental violations involving improper waste disposal, and investigators executed search warrants on Johnson Utilities in October 2009. Johnson contacted Kunasek, who at the time served on the Maricopa County Board of Supervisors and as an advisor to Governor Jan Brewer, and asked him to intervene and help terminate the investigation. Kunasek refused. Johnson later stated that he was upset with Kunasek because he was not being "a team player," and Johnson asked Kunasek to relinquish the Option if he wanted to remain a beneficiary of the Trust. Kunasek refused that request as well.

¶6            Johnson thereafter took actions to strip assets and income streams from the Trust. Johnson told his family members—including the Trustees—that he would no longer do business with any entity benefitting Kunasek, and he decided to terminate Johnson Utilities' management

---

[1]      To avoid confusion among parties with the same surname, we refer to Christopher and Barbara individually by their first names and collectively as "Trustees."

agreement with Shea. Johnson then formed Hunt Management to replace Shea as Johnson Utilities' management service, and he made every Trust beneficiary—except for Kunasek—an owner of Hunt. The Trustees then sold or transferred Trust assets—including Shea's property, equipment, and employees—to Hunt and other Johnson entities, all at a significant discount. Schneidman and Drummond provided legal advice and assisted with these transfers. As a result, the Trust's income and overall value fell precipitously.

¶7        After this falling out with Johnson, Kunasek met with Schneidman and Drummond to discuss the situation and, in particular, Johnson's request that he relinquish the Option. Schneidman and Drummond told Kunasek that he should relinquish the Option to smooth things over with Johnson, but they did not tell him about the sale and dissipation of Trust assets.

¶8        Kunasek sued in February 2013. As relevant here, he alleged that Christopher and Barbara had breached their fiduciary duties as trustees and that Johnson had conspired with them to do so, thereby devaluing Kunasek's interest in the Trust. Kunasek further alleged that John Doe attorneys had wrongfully worked with Johnson and the Trustees against his interests. The superior court later ruled that Kunasek, as a trust beneficiary, lacked standing to bring a claim against a third party (like Johnson) who allegedly harmed the Trust.

¶9        In October 2014, Kunasek moved for leave to amend his complaint to add new claims against new defendants. Specifically, Kunasek sought to add a claim for aiding and abetting the Trustees' breach of fiduciary duty against Johnson (rejoining him as a defendant), Schneidman and Drummond (and their respective law firms), and an accountant (and his accounting firm). The superior court granted leave to amend, and Kunasek's amended complaint asserting the aiding-and-abetting claim was filed in March 2015.

¶10        Johnson moved to dismiss, asserting that the newly added aiding-and-abetting claim was barred by the statute of limitations. The superior court denied the motion. Schneidman and Drummond (collectively, the "Attorney Defendants") and the accountant and his firm likewise filed dispositive motions asserting that the claims against them were time barred. Although the court granted the accountant's motion and dismissed the claim against him and his accounting firm, the court denied the Attorney Defendants' motions.

4

¶11        The case ultimately went to trial before a jury. After Kunasek rested his case-in-chief, the Attorney Defendants moved for judgment as a matter of law ("JMOL") under Arizona Rule of Civil Procedure 50(a) asserting, among other arguments, that the statute of limitations barred Kunasek's claim against them. The court denied the motion.

¶12        After a 13-day trial, the jury returned a unanimous verdict in favor of Kunasek, awarding him $10,500,000 in compensatory damages and apportioning fault among all five defendants. The jury also returned special interrogatories on statute of limitations and punitive damages. The jury unanimously answered that Kunasek did not know of the requisite facts to trigger accrual of his cause of action against Johnson, Schneidman, and Drummond before March 24, 2013 or October 29, 2012, and that Kunasek did not know of the requisite facts underlying his claim against the Trustees before February 20, 2011. Additionally, eight of the eleven jurors found each defendant liable for punitive damages and specified a monetary award against each one, which yielded a total of $10,500,000 in punitive damages.

¶13        After the verdicts, Johnson (later joined by each of the Attorney Defendants) filed a "Motion for Judgment as a Matter of Law on Statute of Limitations Interrogatory," citing Rule 50(a) and asking the court to override the jury's finding that Kunasek did not know or have reason to know of his aiding-and-abetting claim before March 24, 2013. The Attorney Defendants filed a renewed JMOL motion under Rule 50(b) on statute of limitations and other grounds. Additionally, Johnson, Christopher, and Barbara (collectively, the "Johnson Defendants") moved for a new trial or for remittitur based on other alleged errors and an assertion that the evidence did not support the damages award, as did the Attorney Defendants. The superior court denied these motions.

¶14        Meanwhile, Kunasek lodged a proposed form of judgment that included the Attorney Defendants' respective law firms as vicariously liable for the jury's awards against each of the Attorney Defendants. After full briefing, the superior court declined to include the law firms in the judgment.

¶15        The court entered final judgment. The Johnson Defendants and Attorney Defendants timely appealed, and Kunasek timely cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶16        Johnson and the Attorney Defendants challenge the superior court's denial of JMOL on statute of limitations grounds, arguing that Kunasek's aiding-and-abetting claims were time-barred notwithstanding the jury's contrary findings.  All Defendants assert additional trial errors: the Attorney Defendants urge that the judgment was based on improper expert testimony, and the Johnson Defendants challenge the court's refusal to bifurcate the trial, admission of certain other expert testimony, and denial of certain requested jury instructions.  The Johnson Defendants also challenge the amount of compensatory damages awarded and the fact of the punitive damages award, and Johnson individually further asserts that the amount of punitive damages imposed against him was excessive.  Finally, Kunasek cross-appeals the superior court's refusal to enter judgment against the Attorney Defendants' law firms as jointly liable for the awards against the Attorney Defendants.  We affirm in all respects.

**I.        Statute of Limitations.**

**A.        Jury Findings on Accrual.**

¶17        Kunasek first asserted his aiding-and-abetting claim against Johnson and the Attorney Defendants in his amended complaint, filed on March 23, 2015.  At trial, the jury returned special interrogatories expressly finding that Kunasek did not know or have reason to know the requisite facts underlying that claim before March 24, 2013.

¶18        The Attorney Defendants moved for JMOL on statute of limitations grounds both before and after the verdict under Rule 50(a) and (b), and further moved for a new trial on this basis. Johnson (joined by the Attorney Defendants) moved for JMOL after the verdict, citing Rule 50(a), asking the court to override the jury's answer to the special interrogatory on accrual.  The court denied each of those motions.

¶19        The Attorney Defendants argue that the superior court erred as a matter of law by denying their Rule 50 JMOL motions.  Johnson likewise urges that the court erred as a matter of law by denying his Rule 50 motion directed to statute of limitations.  We review the superior court's statute of limitations rulings de novo as questions of law, mindful, however, that the date a cause of action accrues is "usually and necessarily [a] question[] of fact for the jury." *Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32 (1998); *Larue v. Brown*, 235 Ariz. 440, 443, ¶ 14 (App. 2014); *see also Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 27, ¶ 6 (App. 2011) (JMOL motion).

*But see State v. Fischer*, 242 Ariz. 44, 48, ¶¶ 10–11 (2017) (ruling on new trial based on verdict contrary to the evidence reviewed for abuse of discretion).

**¶20** Many tort claims—including a claim for aiding and abetting a breach of fiduciary duty as alleged here—must be filed "within two years after the cause of action accrues, and not afterward." A.R.S. § 12-542; *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 198 Ariz. 173, 175, ¶ 6 (App. 2000). Under the discovery rule, which applies here, a cause of action accrues when the plaintiff knew or by exercise of reasonable diligence should have known the requisite facts underlying the claim. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995). The plaintiff need not know all of the underlying facts (or even the full extent of the injury), just enough "to identify that a wrong occurred and caused injury" and to link that injury "to a particular 'who.'" *Doe*, 191 Ariz. at 323, ¶ 32; *Walk v. Ring*, 202 Ariz. 310, 316, ¶¶ 22–23 (2002); *see also CDT*, 198 Ariz. at 176–77, ¶ 11. Claims filed outside the limitations period are "conclusively barred." *Montano v. Browning*, 202 Ariz. 544, 546, ¶ 4 (App. 2002).

**¶21** Here, once Kunasek was granted leave to amend, he filed his amended complaint asserting the aiding-and-abetting claim against Johnson and the Attorney Defendants on March 23, 2015.[2] Thus, unless his aiding-and-abetting claim accrued before March 24, 2013, his complaint was timely. *See* A.R.S. § 12-542. Johnson and the Attorney Defendants suggest several specific dates before March 2013 by which they argue Kunasek knew or should have known of the facts underlying his aiding-and-abetting claim. But because the facts bearing on when Kunasek acquired the requisite knowledge were disputed, the statute of limitations issue was properly presented to the jury, which found he did *not* have the requisite knowledge before March 24, 2013.

**¶22** First, Johnson and the Attorney Defendants suggest that Kunasek's claim accrued in October 2009 when he met with the Attorney Defendants after his falling out with Johnson. They argue—without citation to the record—that the Attorney Defendants informed Kunasek at that time that "the income-yielding assets of the Trust were being sold to a different entity, and . . . that Mr. Johnson was the one effectuating this transaction." But Schneidman testified at trial that he and Drummond did

---

[2] Kunasek had moved for leave to amend several months earlier, and although the parties dispute whether the limitations period was tolled pending the superior court's ruling on amendment, we need not address that issue because as described below, based on the jury's findings, Kunasek's claim was timely even as of March 23, 2015.

*not* tell Kunasek of the sale of the Trust assets in 2009. Likewise, the Trustees acknowledged at trial that they did not tell Kunasek of the sale. And Kunasek himself testified that he was unaware of the sale and that he thought his falling out with Johnson would blow over.

¶23 Next, the Attorney Defendants argue that Kunasek's claim accrued in December 2011 when he sent the Trustees a litigation hold letter, copying the Attorney Defendants as well. But while the letter demanding that the Trustees preserve Trust-related documents might indicate Kunasek was contemplating a claim against the Trustees for breach of fiduciary duty (which he in fact filed in February 2013), it does not establish as a matter of law that Kunasek knew at that time that the Attorney Defendants had aided or abetted any such breach. To be sure, the letter specifically sought preservation of Trust correspondence "to or from Jeff Schneidman and/or his law firm" and "to or from Gary Drummond and/or his law firm," and copies of the letter were sent to the Attorney Defendants as well. But both of the Attorney Defendants were involved in representing the Trust and/or Trust assets, so their inclusion is entirely consistent with a potential claim against the Trustees alone, without knowledge that the Attorney Defendants had aided or abetted any wrongdoing. And Kunasek testified that, even after the litigation hold letter was sent, he received a substantial payment from the Trust, which "perplexed" him but reassured him there remained money to distribute.

¶24 Finally, the Attorney Defendants and Johnson argue that Kunasek's claims accrued at the latest by the time he filed his original complaint on February 20, 2013. They rely on allegations in that complaint that, in their view, demonstrate Kunasek necessarily knew or had reason to know of the facts underlying the aiding-and-abetting claim against each of them. As to the Attorney Defendants, Kunasek's original complaint included a John Doe defendant described as an Arizona attorney who, despite having an attorney–client relationship with Kunasek, worked for the Johnson Defendants against Kunasek's interests to unjustly enrich them at Kunasek's expense. But even assuming the allegations against the John Doe attorney ultimately referred to the Attorney Defendants, the trial evidence supported the jury's finding that Kunasek did not know or have reason to know of his aiding-and-abetting claim against them at that point. Kunasek, for example, testified that he was not aware that Schneidman and Drummond were involved in designing and effectuating the sales of Trust assets until after the original complaint was filed and discovery began.

¶25 As to Johnson, Kunasek's original complaint asserted claims for conversion, conspiracy, and constructive trust related to diversion of

assets from the Trust to the Johnson Defendants and related entities. But again, the *trial* evidence supported the jury's finding that Kunasek did not know or have reason to know of his aiding-and-abetting claim at that time. Johnson's Rule 50 motion challenged the jury's specific findings on statute of limitations, and a Rule 50 motion challenges the evidentiary basis for a jury's verdict—that is, the sufficiency of trial evidence. *See* Ariz. R. Civ. P. 50(a)(1). But neither the original complaint nor specific testimony describing the timing and allegations of that complaint were admitted at trial for the jury's consideration. Although Johnson presented some contrary evidence, the jury was free to accept Kunasek's theory that the Defendants concealed and explained away their adverse actions, meaning it was only through discovery on his claims against the Trustees that Kunasek was able to unearth who aided whom and how.

¶26 Given factual disputes as to when Kunasek knew or should have known of the facts underlying his aiding-and-abetting claim against Johnson and the Attorney Defendants, the superior court properly left the issue to the jury. *See Doe*, 191 Ariz. at 323, ¶ 32. The Defendants have not shown that the jury's verdict on the point was not supported by sufficient, albeit conflicting, trial evidence.

## B.     Closing Argument on Statute of Limitations.

¶27 Johnson asserts that Kunasek's closing argument improperly urged the jury to disregard the law regarding the statute of limitations defense, resulting in what he asserts was fundamental error. Johnson highlights Kunasek's counsel's characterization of the statute of limitations defense as a "gotcha defense" that would permit the defendants to "walk[] out of the courtroom with no responsibility, no accountability, and without making it right," and he asserts that counsel's statement that "I urge you to reject it" was an invitation to reject the law. Not so.

¶28 Kunasek's argument encouraged the jury to reject the statute of limitations defense (not the law) based on the trial evidence. The argument emphasized Kunasek's testimony that he did not know of Johnson's (and the Attorney Defendants') misconduct until after he sued the Trustees and "ask[ed] [the jury] to reject their defense because they concealed [their misconduct]." Counsel closed with an express request that the jury reject the defense "based on the evidence you've heard." This kind of argument, grounded in the trial evidence and reasonable inferences therefrom, falls well within counsel's wide latitude in closing argument. *See Ritchie v. Krasner*, 221 Ariz. 288, 303, ¶ 54 (App. 2009); *Grant v. Ariz. Pub.*

*Serv. Co.*, 133 Ariz. 434, 451 (1982).  And given no objection was made, the superior court did not err by failing to address it sua sponte.

## II.    Other Alleged Trial Errors.

### A.    Attorney Defendants.

¶29        The Attorney Defendants argue that the superior court erred by permitting expert testimony on Kunasek's behalf from Thomas Zlaket. They urge that Zlaket's testimony was factually irrelevant to the aiding-and-abetting claim against them and thus merely confused the issues, and that it improperly directed the jury to apply an erroneous legal standard.

¶30        The court may permit testimony by a qualified expert if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Ariz. R. Evid. 702(a).  Here, the relevant issues and evidence involved Kunasek's claim against the Attorney Defendants for aiding and abetting the Trustees' breach of fiduciary duty.  That claim required proof that (1) the Trustees breached a fiduciary duty and thereby caused Kunasek harm, (2) the Attorney Defendants knew of the breach, and (3) the Attorney Defendants substantially assisted or encouraged the Trustees in the breach.  *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 95 Pension Tr. Fund*, 201 Ariz. 474, 485, ¶ 34 (2002); *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 491, ¶ 44 (App. 2008).  We review the superior court's determination that expert testimony would help the trier of fact—that it "fits" the facts and issues at play—for an abuse of discretion.  *Messina v. Midway Chevrolet Co.*, 221 Ariz. 11, 16, ¶ 22 (App. 2008); *see also State v. Salazar-Mercado*, 234 Ariz. 590, 593, ¶ 10 n.1 (2014).

¶31        The Attorney Defendants first argue that Zlaket's testimony was unhelpful and inadmissible because it focused on their own ethical duties as attorneys, which they assert was irrelevant to Kunasek's aiding-and-abetting claim premised on breach of the Trustees' fiduciary duties. But Zlaket's testimony went to the Attorney Defendants' knowledge of the Trustees' breach, a critical element of the aiding-and-abetting claim.  *See Wells Fargo*, 201 Ariz. at 485, ¶ 36.  Zlaket described how attorneys are necessarily familiar with, for example, a duty of loyalty and a duty to avoid conflicts of interest—fiduciary and ethical obligations owed to each client and about which attorneys receive continuing legal education every year. The Attorney Defendants' existing understanding of conflicts of interest bears on whether they would have recognized the Trustees' behavior as a breach of fiduciary duty.

¶32        The Attorney Defendants assert, however, that Zlaket's testimony was nevertheless insufficient because he only went so far as to say they *should* have known of the Trustees' breach, whereas the aiding-and-abetting claim required proof that they *actually* knew the Trustees' conduct constituted a breach.   But the jury may infer the requisite knowledge from the surrounding circumstances. *Id.*; *see also Pope*, 219 Ariz. at 491, ¶ 45.  And Zlaket's testimony plausibly assisted the jury in assessing whether, given background knowledge of fiduciary duties generally, the Attorney Defendants understood the Trustees' sale of the Trust assets to be a breach of fiduciary duty.  *Cf. Wells Fargo*, 201 Ariz. at 488, ¶ 45 ("A showing of actual and complete knowledge of the [underlying] tort is not uniformly necessary to hold a secondary tortfeasor liable under an aiding and abetting theory.").   The Attorney Defendants urge that expert testimony was unnecessary on this point given other, more direct evidence going to knowledge, but even assuming expert testimony was not *required*, that does not mean it was not *helpful* to the jury in making its assessment. *See* Ariz. R. Evid. 702(a).

¶33        Next, the Attorney Defendants argue that Zlaket focused on an inapplicable legal standard (the Attorney Defendants' own ethical obligations) and, in that context, improperly opined on an ultimate issue and infringed on the role of the jury by testifying that there was "no leeway" in applying attorney conflict of interest rules.  *See* E.R. 1.7.  They assert that this testimony was necessarily unfairly prejudicial because of how heavily Kunasek emphasized Zlaket's credentials.   Expert opinion testimony may permissibly embrace an ultimate issue, *see* Ariz. R. Evid. 704(a), although it "must still be helpful to the trier of fact and cannot be couched in legal conclusions that simply opine 'how juries should decide cases,'" *Webb v. Omni Block, Inc.*, 216 Ariz. 349, 353, ¶ 12 (App. 2007); *see also id.* at ¶ 14 (noting that testimony that "provides no information to the trier of fact except what the verdict should read" remains inadmissible).  Here, Zlaket did not opine on an ultimate issue at all.  He opined that the Attorney Defendants' conduct violated the rules of professional responsibility governing lawyers, whereas the issue for the jury (as the Attorney Defendants acknowledge) was whether the Attorney Defendants knew of and assisted in the Trustees' breach of the Trustees' own fiduciary duty. Consistent with this mandate, the jury was instructed that the Attorney Defendants could be held liable for assisting in the Trustees' breach, *not* that the Attorney Defendants' own conflicts of interests would establish liability.   And because the testimony plausibly assisted the jury in its assessment of whether the Attorney Defendants knew of the Trustees' breach, the court did not err by permitting it.

**B.      Johnson Defendants.**

¶34      The Johnson Defendants argue that the superior court committed various trial errors requiring a new trial.  First, they challenge the court's denial of their request to bifurcate trial to separate the issue of punitive damages.  Second, they assert that the court improperly allowed Kunasek's trust expert to opine that the Trustees breached their fiduciary duties.  Third, they urge that the court erred by rejecting three requested jury instructions.

**1.      Bifurcation.**

¶35      The Johnson Defendants argue that the court erred by denying their request to sever the issue of punitive damages for trial.  They assert that admitting the evidence of their respective net worths, which was relevant to punitive damages but not to liability, necessarily resulted in bias and unfair prejudice tainting the jury's verdicts.  The superior court has broad discretion to order a separate trial of any issue or claim to avoid prejudice.  Ariz. R. Civ. P. 42(b); *Williams v. Thude*, 180 Ariz. 531, 534 (App. 1994).  We review the denial of a bifurcation motion for an abuse of discretion.  *Romero v. Sw. Ambulance*, 211 Ariz. 200, 203, ¶ 5 (App. 2005).

¶36      Evidence of a defendant's wealth is relevant to the jury's calculation of an appropriate punitive damages award.  *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497 (1987).  But proof of a defendant's substantial net worth may have a prejudicial effect by enflaming bias as the jury considers liability or compensatory damages. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).  The superior court thus may exercise its discretion to bifurcate trial on this basis—but a claim for punitive damages does not automatically require bifurcation.  *See, e.g., Dodge City Motors, Inc. v. Rogers*, 16 Ariz. App. 24, 25 (App. 1971) (no bifurcation); *Puz v. McDonald*, 140 Ariz. 77, 78 (App. 1984) (same); *Pope*, 219 Ariz. at 490, ¶¶ 38–40 (same).

¶37      Here, the Johnson Defendants do not specify any particular prejudice and instead simply assume that the net-worth evidence "create[d] potential bias" against them.  They also fail to account for the fact that their significant wealth was implicit in the evidence supporting Kunasek's substantive claims.  In addressing liability, the jurors considered evidence about and were necessarily aware of, for example, the Trust's significant assets and income-generating capacity, Johnson's prior ownership of the assets used to fund the Trust, and the scope of the Trustees' own beneficial

interests in the Trust. Under the circumstances, the superior court did not abuse its discretion by declining to bifurcate the trial.

## 2. Expert Testimony.

¶38 The Johnson Defendants argue that the superior court erred by permitting Kunasek's trust expert, Marlene Appel, to testify that their conduct fell below a trustee's standard of care. We review the court's rulings on admissibility of expert testimony for an abuse of discretion. *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 297, ¶ 15 (App. 2014).

¶39 As noted previously, an expert may not instruct the jury how to decide a case, but expert opinion testimony is not objectionable simply because it embraces an ultimate issue. *See* Ariz. R. Evid. 704(a); *Webb*, 216 Ariz. at 353, ¶¶ 12, 14. The critical consideration remains whether the testimony is helpful and will assist the jury "to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a); *Webb*, 216 Ariz. at 353, ¶¶ 13–14; *see also* Fed. R. Evid. 704, advisory committee's note to 1972 proposed rules (contrasting excludable testimony "phrased in terms of inadequately explored legal criteria" like "Did T have capacity to make a will?," from permissible expert testimony exploring the factual underpinnings of the legal rule like "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?").

¶40 Here, the court instructed the jury that trustees owed beneficiaries a fiduciary duty "to act as reasonable persons in dealing with the property of others." Consistent with the Arizona Trust Code, the court defined a trustee's fiduciary obligations, including the duty to administer the trust in good faith (consistent with the trust's purposes and express terms, as well as in the beneficiaries' interests), the duty of loyalty, the duty of impartiality (as between beneficiaries), the duty of adequate record keeping, and the duty to provide reports to beneficiaries and otherwise keep them informed. *See* A.R.S. §§ 14-10801 to -10805, -10807, -10809 to -10813.

¶41 The court permitted Appel's testimony over the Johnson Defendants' objection, finding that it would "assist the jury in understanding the duties owed by trustees." At trial, Appel described the specific fiduciary obligations (like good faith, loyalty, and impartiality) owed by trustees and explained to the jury what those obligations involved. She gave the jury context for the types of considerations implicated both through examples of conduct that would meet (or not meet) a trustee's

fiduciary duty and by discussing the Trustees' actual conduct. Appel also testified that, in her opinion, several aspects of the Trustees' actions were "substandard" or "fell below the standard of care"—but she contemporaneously explained to the jury why such conduct was inconsistent with a trustee's fiduciary obligations.

¶42 Although the Johnson Defendants characterize Appel's testimony as improper legal conclusions that merely told the jury how to decide the case, her testimony was in large part descriptive, recounting for the jury what a trustee's fiduciary obligations *meant* in concrete terms. While a trustee's standard of care was expressed in terms of ordinary reasonableness, the underlying fiduciary obligations—duties of good faith administration, loyalty, impartiality, etc.—were substantially more complex and appropriately addressed through an expert's "specialized knowledge." *See* Ariz. R. Evid. 702(a); *cf. Ryan v. Napier*, 245 Ariz. 54, 66, ¶ 52 (2018) (expert may properly describe relevant factors bearing on jury's consideration). The Johnson Defendants did not dispute the propriety of expert testimony to describe a trustee's fiduciary duties and in fact also proffered expert testimony on the issue. And even when Appel ultimately testified that the Trustees' conduct was "substandard," she did not simply tell the jury to find breach but rather described how conduct of that type corresponded with a trustee's discrete fiduciary obligations. Such testimony plausibly assisted the jury in understanding the parameters of a trustee's duty and thus "help[ed] the trier of fact to understand the evidence or to determine a fact in issue." *See* Ariz. R. Evid. 702(a); *Webb*, 216 Ariz. at 353, ¶¶ 13–14. The superior court did not err by permitting it.

### 3. Requested Jury Instructions.

¶43 The Johnson Defendants next argue that the superior court erred by denying three jury instructions they requested. Generally, the court must give a requested instruction that correctly states the law, is supported by the evidence, and pertains to an important issue—but only if "the gist of the instruction is not given in any other instructions." *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10 (1985). The court may refuse to give any requested instruction—even an accurate one—when other instructions adequately convey its substance. *Id.*; *see also Haynes v. Syntek Fin. Corp.*, 184 Ariz. 332, 341 (App. 1995). We review the court's rulings on requested instructions for an abuse of discretion, considering the jury instructions in their entirety. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 533, ¶ 50 (App. 2009).

### a. "Willful Misconduct."

¶44  The Johnson Defendants first assert that the court erred by denying their mid-trial request to instruct the jury that the Trustees "are not liable for breach of fiduciary duties . . . unless they acted with willful misconduct." They rely primarily on an indemnification clause in the Trust that, in their view, renders a trustee not liable (to a beneficiary or otherwise) for any "mistake or error of judgment" resulting in loss to the Trust unless based on the trustee's "willful misconduct or fraud."

¶45  The court declined to give this instruction because the Johnson Defendants had not timely requested it and did not offer good cause for the untimely request. Although the Johnson Defendants argue that they could not have anticipated a need for this instruction before hearing trial testimony, their proffered explanation falls short of explaining why a purported limitation of the Trustees' liability for breach of fiduciary duty (Kunasek's sole substantive claim against them) could not have been timely raised.

¶46  Moreover, timeliness of the request aside, the other jury instructions correctly stated the relevant law. The court properly instructed the jury that the Trustees owed a fiduciary duty to the beneficiaries of the Trust, properly delineated the Trustees' fiduciary obligations consistent with the strictures of the Arizona Trust Code, *see* A.R.S. tit. 14, ch. 11, art. 8, and properly instructed the jury that Kunasek had the burden to prove the Trustees breached their fiduciary duty. Additionally, the court instructed the jury — again, as delineated in the Arizona Trust Code — that "[t]he terms of a trust prevail except as to the duty of a trustee to act in good faith and in accordance with the purpose of the trust." *See* A.R.S. § 14-10105(B)(2). Based on the instructions given, the Johnson Defendants were free to argue that the indemnification provision shielded the Trustees from liability absent willful misconduct, but only to the extent that provision did not run afoul of the duty to act in good faith and in accordance with the Trust's purpose. The court thus did not err by declining this requested instruction. *See DeMontiney*, 144 Ariz. at 10.

### b. Scope of Damages.

¶47  The Johnson Defendants next assert that the court erred by denying their mid-trial request to instruct the jury that it could award only "damages [] that you find were caused by breach of fiduciary duty by [Trustees]" and not "additional damages if you find that one or more of the other defendants aided and abetted such fiduciary breach." Even assuming

good cause for an untimely request, the substance of the requested instruction was adequately conveyed by the other instructions that were given. The court instructed the jury that Kunasek had to prove the "[Trustees'] breach of fiduciary duty was a cause of [his] damages" and that the measure of damages was the amount "proved by the evidence to have resulted from [the Trustees'] breach of [fiduciary] duty." The court further instructed the jury that Kunasek's aiding-and-abetting claim was an assertion that Johnson and the Attorney Defendants were "liable for the consequences of [the Trustees'] conduct"—that is, that they shared liability for the same scope of damages. Because other instructions conveyed the substance of this requested instruction, the court did not err by declining the requested instruction. *See id.*

### c. Stakeholder.

¶48 Finally, the Johnson Defendants assert that the court erred by denying their request to instruct the jury that although Kunasek was a "stakeholder" in Shea, he was "not entitled to seek damages against Shea's officers or managers [including Christopher and Barbara] for breach of duties owed to Shea in that capacity." But Kunasek agreed that he had no claim on that basis (and did not argue or mention it in closing), and the other instructions made clear that the Trustees' liability, if any, was limited to breach of their fiduciary duty as trustees. The court instructed the jury that Christopher and Barbara "[were] each a trustee" and, as trustees, owed a fiduciary duty to beneficiaries (like Kunasek); that this duty required "*trustees* to act as reasonable persons in dealing with the property of others"; and that to prevail, Kunasek had to prove the Trustees "breached *this* duty." (Emphasis added.) Accordingly, the court did not err by denying the requested stakeholder instruction. *See id.*

## III. Damages.

### A. Compensatory Damages.

¶49 The Johnson Defendants argue that the jury's award of $10,500,000 in compensatory damages was excessive, so the superior the court erred by denying their request for remittitur or for new trial. *See* Ariz. R. Civ. P. 59(a)(1)(E), (f). We review this ruling for an abuse of discretion. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 581, ¶ 37 (App. 2015).

¶50 Generally, the amount of damages to award falls "peculiarly within the province of the jury." *Larriva v. Widmer*, 101 Ariz. 1, 7 (1966); *see also Creamer v. Troiano*, 108 Ariz. 573, 576–77 (1972). The superior court has discretion, however, to "reduc[e] an excessive verdict to the realm of

reason." *Desert Palm*, 236 Ariz. at 581, ¶ 38 (citation omitted); *see also Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 9 (2017) (remittitur proper if a verdict "reflects an exaggerated measurement of damages" (citation omitted)). That discretion may be exercised "only for the most cogent reasons, such as lack of evidence supporting the damages awarded" or given "a clear indication that the jury misapplied the principles governing damages." *Desert Palm*, 236 Ariz. at 581, ¶ 38; *In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 14 (App. 2011).

**¶51**        The Johnson Defendants' primary contention is that the jury's verdict overvalued the income the Trust would have received from Shea's management agreement with Johnson Utilities. They assert that, even without the Trustees' cooperation, Johnson could have transitioned all management services away from Shea within (at most) six months, undermining Kunasek's damages calculation premised on the Trust receiving substantial income from Shea over a period of years. But this ignores Kunasek's contention that the Trustees were complicit in facilitating termination of the management agreement and breached their fiduciary obligations to preserve and manage the Trust assets by, for example, failing to seek renewal of the agreement for a term of years in the first instance (rather than continuing in a relationship terminable at will) or otherwise oppose the transfer of Shea's assets directly to an entity in which the Trustees held an interest. And in any event, the proposed six-month cap relies on Johnson's own testimony, which the jury was free to reject. *See Logerquist v. McVey*, 196 Ariz. 470, 488, ¶ 52 (2000) (reiterating that credibility is a fact question for the jury); *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000).

**¶52**        More generally, Kunasek's damages expert calculated total economic damages as between approximately $11,500,000 and $14,000,000, and he explained to the jury the bases for his calculation. The Johnson Defendants presented testimony from their own damages expert critiquing this calculation, and they argued in closing that the jury should discount the amount significantly. Ultimately, the jury was left to decide which side—and which expert—to believe. Especially given that the jury awarded less than Kunasek's expert proposed, the record does not show that the award was necessarily excessive or that the jurors did not consider the Johnson Defendants' argument. Accordingly, the superior court did not abuse its discretion by denying the Johnson Defendants' challenge to the compensatory damages award. *Cf. Creamer*, 108 Ariz. at 576–77.

### B. Punitive Damages Award.

**¶53** In addition to $10,500,000 in compensatory damages, the jury awarded Kunasek a total of $10,500,000 in punitive damages. Against each Trustee, the jury imposed $735,000 in punitive damages, one fifth of their respective shares of the compensatory award. Against Johnson, the jury imposed $7,875,000 in punitive damages, three times his share of the compensatory award.

**¶54** The Johnson Defendants argue that the evidence did not support imposition of punitive damages, and Johnson individually argues that the award imposed against him was unconstitutionally excessive. We will affirm a jury's decision to award punitive damages "if any reasonable evidence exists to support it," *Pope*, 219 Ariz. at 498, ¶ 82 (citation omitted), although we consider de novo constitutional challenges to the amount of any such award, *see Arellano v. Primerica Life Ins. Co.*, 235 Ariz. 371, 378, ¶ 34 (App. 2014).

### 1. Award.

**¶55** Punitive damages may be awarded in tort cases "to punish the wrongdoer and to deter others from emulating his conduct." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330 (1986); *see also Swift Transp. Co. of Ariz. L.L.C. v. Carman*, CV-20-0119-PR, 2022 WL 3591972, at *4, ¶ 20 (Ariz. Aug. 23, 2022). To warrant an award of punitive damages, the plaintiff must prove, by clear and convincing evidence, "more than the mere commission of a tort": that the defendant's "evil hand was guided by an evil mind." *Quintero v. Rogers*, 221 Ariz. 536, 541, ¶¶ 15–16 (App. 2009) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986)); *see also Swift Transp.*, CV-20-0119-PR, at *5, ¶ 22. The requisite "evil mind" may include malicious actions taken with an "intent to injure" or "motivated by spite [or] actual malice," *Linthicum*, 150 Ariz. at 331; *Gurule v. Ill. Mut. Life & Cas. Co.*, 152 Ariz. 600, 602 (1987), or "outrageous [actions], creating a 'substantial risk of tremendous harm to others,'" *Swift Transp.*, CV-20-0119-PR, at *5, ¶ 22 (quoting *Volz v. Coleman Co.*, 155 Ariz. 567, 570 (1987)); *see also Rawlings*, 151 Ariz. at 162 ("consciously pursu[ing] a course of conduct knowing that it created a substantial risk of significant harm to others"). The existence of an "evil mind" may be "express or may be implied from the nature of the acts and the circumstances," and in drawing that inference, the jury can consider concealing or dishonest conduct in the context of the parties' relationship. *Johnson v. Pankratz*, 196 Ariz. 621, 624, ¶ 13 (App. 2000); *Rhue v. Dawson*, 173 Ariz. 220, 232 (App. 1992); *see also Swift Transp.*, CV-20-0119-PR, at *5, ¶ 23 n.2 (inference of evil mind).

¶56        The Johnson Defendants assert that punitive damages were not warranted because "Johnson's sole motivation in divesting the Trust's assets was to protect the company."  And Johnson indeed testified that he terminated the management agreement with Shea for legitimate business reasons.  But other evidence supported a contrary interpretation of his actions: that Johnson acted out of spite intending to injure Kunasek economically as punishment for Kunasek's refusal to interfere with the governmental investigation targeting Johnson Utilities.

¶57        After Kunasek refused to use his political connections to "take care of" the investigation, Johnson became "upset" with Kunasek for not being "a team player" and instructed the Trustees that he would no longer do business with any entity that benefitted Kunasek.  For their part, the Trustees confirmed that they participated in devising the plan to devalue the Trust assets—engaging in obvious self-dealing at Kunasek's expense—and concealed their actions from Kunasek despite their fiduciary obligations.  The jury had ample evidence from which to conclude that Johnson acted with malice and that the Trustees consciously and deliberately pursued a course of action despite knowing of the resulting harm, satisfying the requirement of "evil mind."  *See Rawlings*, 151 Ariz. at 162; *Swift Transp.*, CV-20-0119-PR, at *5, ¶ 24.

## 2.    Amount.

¶58        Even when an award of punitive damages is appropriate, due process imposes a substantive limit on the amount of such an award.  *See Campbell*, 538 U.S. at 416.  In assessing the reasonableness of an award, we consider factors including "the degree of reprehensibility of the defendant's misconduct" and "the disparity between the . . . harm suffered by the plaintiff and the punitive damages award," *id.* at 418, as well as "the proportionality of the award to the wrongdoer's financial position to ensure that the goals of punishment and deterrence are served without financially devastating the defendant," *Hyatt Regency Phx. Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 134 (App. 1995).  Generally, the degree of reprehensibility is the most important factor in this analysis, depending on considerations including type of harm (physical or merely economic), frequency of conduct (repeated actions or isolated incident), and motivation ("intentional malice, trickery, or deceit, or mere accident").  *Pope*, 219 Ariz. at 501, ¶ 95 (quoting *Campbell*, 538 U.S. at 419); *see also Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 490, ¶ 52 (App. 2009) (same).

¶59        Johnson argues that the punitive damages award against him for three times his share of the compensatory award was excessive and

should be reduced to a 1:1 ratio. While the harm to Kunasek was purely financial, the evidence nevertheless supports the conclusion that Johnson's conduct was reprehensible. *See, e.g., Pope*, 219 Ariz. at 501–02, ¶¶ 96–97. Although Johnson contends otherwise, the evidence supports a finding that Johnson acted with intentional malice and with an improper purpose: to punish Kunasek's refusal to interfere with a governmental investigation on Johnson's behalf. He did so by catalyzing a comprehensive scheme to secretly undermine Kunasek's vested rights.

¶60 Likewise, although the overall award of compensatory damages was substantial, Johnson's share was fairly low despite his role as the primary driving force behind the unlawful stratagem. A higher ratio of punitive to compensatory damages could reasonably serve to compensate for Johnson's "particularly egregious" role in the scheme. *See Hudgins*, 221 Ariz. at 491, ¶ 57 (citing *Campbell*, 538 U.S. at 425). And Johnson's significant wealth suggests that a greater amount was appropriate to ensure the award would accomplish the goals of punishment and deterrence. *See Hawkins*, 152 Ariz. at 497. Under the circumstances, Johnson has not shown that a 3:1 ratio of punitive damages was so excessive as to violate due process.

## IV. Kunasek's Cross-Appeal.

¶61 Finally, Kunasek argues that the superior court erred by declining to enter judgment against the Attorney Defendants' law firms as vicariously liable for the damages awarded against the Attorney Defendants themselves.

¶62 In his amended complaint, Kunasek named Schneidman's and Drummond's respective law firms as defendants, and he alleged that both Schneidman and Drummond were acting in the course and scope of their employment when aiding and abetting the Trustees' breach of fiduciary duty. *See Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57, ¶ 9 (2012) (employer vicariously liable for employee's torts committed within the course and scope of employment); *Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 310 (1987). Schneidman and his firm admitted this allegation in their answer, and Schneidman confirmed it while testifying at trial. Drummond and his firm denied the allegation.

¶63 Kunasek did not file any dispositive pretrial motion on the issue of vicarious liability. And although Kunasek listed the firms' vicarious liability as a contested issue in the joint pretrial statement, he did not submit jury instructions on the issue or a verdict form with which the

jury could decide it. Nor did Kunasek move for judgment as a matter of law on the issue during trial.

¶64 After the verdict, Kunasek filed a form of judgment including the law firms, and after the firms objected, he moved for a ruling that each firm was liable for the judgment against its respective Attorney Defendant. The court declined to enter judgment against either firm, noting that the firms were not included in the verdicts and finding no other legal basis to enter judgment against them.

¶65 Kunasek now argues that the superior court erred because Schneidman (and his firm) admitted the necessary factual basis for vicarious liability and because the trial testimony makes it "evident" that Drummond was likewise acting in the course of his employment. But Kunasek provides no authority — and we are aware of none — for the notion that the superior court may enter a post-jury-verdict judgment against a party without a dispositive ruling or jury verdict against that party. To the contrary, entry of judgment contemplates an issue that has been formally resolved, whether by the jury's verdict or the court's ruling as a matter of law. *See, e.g.*, Ariz. R. Civ. P. 12(c), 56(b)(3), 49(b)(2), 50(a)(1); *see also Kelman v. Bohi*, 27 Ariz. App. 24, 35 (App. 1976) (noting that failure to submit desired verdict forms "waive[s] the[] right to raise this issue on appeal").

¶66 Kunasek did not seek a verdict on vicarious liability, and he never timely moved for a ruling on the issue as a matter of law. Absent an underlying ruling or verdict, the court had no basis to enter judgment against the firms and thus did not err by denying Kunasek's request to do so.

## V. Attorney's Fees and Costs on Appeal.

¶67 The Johnson Defendants and the Attorney Defendants — who have not prevailed on appeal — seek an award of attorney's fees. They cite only ARCAP 21 as authority, which is not a substantive basis for a fee award. *See* ARCAP 21(a)(2). We deny their requests.

¶68 All parties request an award of costs on appeal. As to the Johnson Defendants' and Attorney Defendants' appeal, Kunasek prevailed and is entitled to his taxable costs related to the appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A). As to Kunasek's unsuccessful cross-appeal, the Johnson Defendants and Attorney Defendants prevailed and thus are entitled to their taxable costs associated with the cross-appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(B).

## CONCLUSION

¶69 The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA